IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 15, 2017 Session

## TINA LYNN DAVIS NEWELL v. FIRST STATE BANK, INC., ET AL.

**Appeal from the Circuit Court for Tipton County**
No. 7212      Joe H. Walker, III, Judge

_____

### No. W2017-01209-COA-R3-CV
_____

A customer of a tanning salon injured herself upon exiting the salon when she fell while stepping off the curb onto a snow and ice-covered portion of the parking lot where she had parked her car. The customer brought suit against the owners of the tanning salon and of the shopping center, as well as a grounds keeping service, alleging that the co-defendants negligently failed to clear the ice and snow from the parking lot or warn her of the potential danger. The owners of the tanning salon filed a motion for summary judgment. Finding that the tanning salon owed no duty to the customer, the trial judge granted summary judgment. The customer appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOE G. RILEY, SP. J ., joined.

Steven Wilson and Jack McNeil, Memphis, Tennessee, for the appellant, Tina Lynn Davis Newell.

Cameron M. Watson and Christopher M. Myatt, Memphis, Tennessee, for the appellees, Stephen M. McCann and Sara B. McCann.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

On January 9, 2015, Tina Lynn Davis Newell ("Appellant") filed a complaint against co-defendants Sara and Stephen McCann (d/b/a Elite Beach Tanning Company) ("Appellant," or "Elite"), First State Bank, Inc. ("Landlord"), and Aardvark Sweeping Services, LLC, to recover damages for personal injuries she sustained in a fall in the

parking lot of a shopping center, a few days after a severe winter ice-and-snow storm had befallen the area surrounding Atoka, Tennessee. Just prior to her fall,[1] Ms. Newell had attended a tanning session at Elite, a tanning salon in the Kimbrough Corners shopping center.[2] According to Ms. Newell's complaint, she slipped in the parking lot upon stepping off the curb onto ice, concealed by partially-frozen precipitation ("slush"), while returning to her car.

On September 19, 2016, after taking discovery, Elite filed a motion for summary judgment alleging that Ms. Newell had failed to establish the duty element of her negligence claim, and asserting the affirmative defense of comparative fault.[3] In support of its motion, Elite offered, *inter alia*, its lease agreement with Landlord and Ms. Newell's deposition. Elite argued that the lease agreement provided that Landlord was contractually obligated to maintain the parking area. Moreover, Elite argued, Ms. Newell's own testimony indicated that she appreciated that there was slush surrounding her car that could be slippery, and she failed to use proper caution.

On March 20, 2017, the trial court entered an order granting Elite's motion for summary judgment. The trial court concluded that Elite owed no duty to Ms. Newell because the parking spaces were not under Elite's control, and that the slush was not an unreasonably dangerous condition sufficient to trigger a duty to warn or make safe because it was an open and obvious condition. Ms. Newell filed a "Motion for Interlocutory Appeal," which Appellees opposed and which the trial court denied. However, the parties requested that the trial court certify its order granting summary judgment, pursuant to Tennessee Rule of Civil Procedure 54.02, and make it a final judgment. The trial court then amended its order of March 20, 2017, and granted summary judgment and entered it as a final judgment as to Elite. Ms. Newell timely appealed.

## ISSUES PRESENTED

Ms. Newell raises the following issues for our review, which we revise and restate as follows:

> I. Whether Elite, as a lessee in the shopping center, had a duty to Ms. Newell for injuries sustained in the shopping center's parking lot where she fell.

---

[1] Ms. Newell fell on March 7, 2014.

[2] Ms. Newell had also attended a tanning session at the same salon the day before on March 6, 2014. On March 6, 2014, she traversed the ice and snow in the parking lot near the salon without incident.

[3] Elite's co-defendant, Aardvark Sweeping Services, also filed a motion for summary judgment, and the trial court granted the motion. However, that judgment is not the subject of this appeal.

II. Whether the Trial Court erred in concluding that Elite had no duty to warn Ms. Newell of the slush in the parking lot or a duty to remove the slush from the parking spaces.

## STANDARD OF REVIEW

Summary judgment is appropriate when the moving party has demonstrated that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Thompson v. Ruby Tuesday, Inc.*, No. M2004-01869-COA-R3-CV, 2006 WL 468724, at *2 (Tenn. Ct. App. Feb. 27, 2006) (citing *Byrd v. Hall*, 847 S.W.2d 585, 588 (Tenn. 1998)). At the summary judgment stage, the moving party bears the burden of either affirmatively negating an essential element of the nonmoving party's claim or conclusively establishing an affirmative defense. *Id*. (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of a genuine issue of disputed material fact. *Id*. The nonmoving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *See Green v. Roberts*, 398 S.W.3d 172, 176 (Tenn. Ct. App. 2012) (quoting *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

The reviewing court must then determine whether a factual dispute exists. *Id*. In making this determination, we must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *See Boykin v. George P. Morehead Living Tr.*, No. M2014-00575-COA-R3-CV, 2015 WL 3455433, at *2 (Tenn. Ct. App. May 29, 2015). Summary judgment is inappropriate if there is any doubt concerning the existence of a genuine issue of material fact, and the court may only award summary judgment when a reasonable person could only come to one conclusion based on the facts and inferences drawn from those facts. *Thompson*, 2006 WL 468724, at *2. We review an award of summary judgment *de novo*, with no presumption of correctness. *Id*. (citing *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002)).

## DISCUSSION

A claim for negligence requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate cause. *See West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005) (citing *Coln v. City of Savannah*, 996 S.W.2d 34, 39 (Tenn. 1998)).

- 3 -

Negligence cannot be presumed by the mere happening of an accident. *Brackman v. Adrian*, 472 S.W.2d 735, 739 (Tenn. Ct. App. 1971). "Simply put, '[p]eople fall all the time[,] but this does not perforce mean that the fall was due to another's negligence[.]'" *Mooney v. Genuine Parts Co.*, No. W2015-02080-COA-R3-CV, 2016 WL 2859149, at *3 (Tenn. Ct. App. Apr. 20, 2016) (quoting *Anderson v. Wal-Mart Stores E., L.P.*, No. 2:12-00037, 2013 WL 3010696, at *3 (Tenn. Ct. App. June 18, 2013)).

Negligence cases are generally unamenable to disposition at the summary judgment stage, unless the inferences and facts taken together "are so certain and uncontroverted that reasonable minds would agree." *See Boykin*, 2015 WL 3455433, at *2 (quoting *Burgess v. Tie Co. 1, LLC*, 44 S.W.3d 922, 923 (Tenn. Ct. App. 2008)). With this instruction in mind, we turn to consider whether Elite, as a tenant in the shopping center, owed a duty to clear frozen precipitation from the parking lot area in the vicinity of the leased space or to warn Ms. Newell that the slush could be slippery under the circumstances of this case.

## I. DUTY: LOCATION OF THE FALL

Elite claims that, as the lessee of a single leased store in the shopping center, it owed no duty to Ms. Newell to maintain the common parking lot. The issue of whether Elite owed Ms. Newell a duty is a question of law. *See Berry v. Houchens Mkt. of Tenn., Inc.*, 253 S.W.3d 141, 145 (Tenn. Ct. App. 2007) (citation omitted). It is undisputed that Elite leased the premises from Landlord. Likewise, it is undisputed that Elite's lease specified that Landlord was responsible for maintaining the common areas, including the parking lot.[4] However, Ms. Newell argues that, despite the lease, Elite owed her a duty of care as the occupier of the area in which she fell because Elite assumed control over the spaces by directing employees not to park there. Alternatively, Ms. Newell argues that Elite owed her a duty with respect to the parking spaces because the parking spaces were located approximately fifteen feet from Elite's door. Therefore, according to Ms. Newell, the spaces constituted part of Elite's approach, and Elite owed her a duty to provide a safe ingress and egress by removing the slush from the parking spaces or warning her. We now turn to address Ms. Newell's arguments in light of the case law.

It is well established that when "a landlord retains possession of a part of the premises for use in common by different tenants, the landlord is under a continuing duty

---

[4] In relevant portion, the lease states:

> Common Areas: The common areas are part of the Shopping Center designated by Landlord from time to time for the common use of all tenants, including, among other facilities, **parking areas**, sidewalks, landscaping, curbs . . . , all of which are subject to Landlord's sole management and control and shall be operated and maintained in such a manner as Landlord, in its discretion, shall determine.

imposed by law to exercise reasonable care to keep the common areas in good repair and safe condition." *See Id.* at 146 (quoting *Teddler v. Raskin*, 728 S.W.2d 343, 347–8 (Tenn. Ct. App. 1987)). "Although the landlord has the duty to keep common areas safe and in good repair, a lessee also has a 'duty to see that the leased premises and its approach is in a reasonably safe condition.'" *Id.* (quoting *Thompson v. Ruby Tuesday, Inc.*, No. M2004-01869-COA-R3-CV, 2006 WL 468724, at *3 (Tenn. Ct. App. Feb. 27, 2006)). However, a lessee does not have a duty to a customer, injured in the common parking area of a shopping center, when the lessee has not exercised control over the parking lot and the lessee's lease provides that the lessor is responsible for maintaining the safety of the common areas. *Id.*; *see also Thompson*, 2006 WL 468724, at *3; *Gladman v. Revco Disc. Drug Ctrs., Inc.*, 669 S.W.2d 677, 678–79 (Tenn. Ct. App. 1984).

In *Gladman*, a customer fell in the slushy parking lot of a multi-store shopping complex, injuring himself. 669 S.W.2d at 678. A store owner's lease specified that the landlord was responsible for maintaining the common areas, and specifically stated that the landlord was responsible for removing snow and frozen precipitation. *Id.* The store owner filed a motion for summary judgment alleging that it owed no duty with respect to the common parking lot, and the trial court granted the motion having concluded that the plaintiff failed to establish the duty element. *Id.* On appeal, this Court affirmed, holding that the store owner owed no duty to maintain the common parking lot. *Id.* at 679.

Just as in *Gladman*, Elite negated the element of duty by affirmatively demonstrating that Landlord was contractually responsible for maintaining the common areas, including the parking spaces in front of Elite. At the summary judgment stage, "[i]f the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim." *Berry*, 253 S.W.3d at 145 (quoting *Blair v. W. Town Mall*, 130 S.W.3d 761 (Tenn. 2004)). Ms. Newell has proffered only the "evidence" that Elite had a general operational policy of instructing employees not to park in the spaces directly in front of Elite so that the spaces would be free for customers. According to Ms. Newell, this policy evidences a level of "control" over the parking lot sufficient to hold Elite responsible for clearing frozen precipitation from the common areas. We disagree. Elite's policy was an attempt to control employees, not parking spaces. Ms. Newell's "proffered" evidence is insufficient to establish duty vis-à-vis the assumption of control theory of liability under these facts.

We now turn to evaluate whether Ms. Newell proffered sufficient evidence to survive appellant's motion for summary judgment by establishing the duty element under the "approach" theory. Relying on *Roberts v. Tennessee Wesleyan College*, Ms. Newell argues that Elite owed her a duty of care in the parking lot because the spaces constituted part of the approach to Elite. *See Roberts v. Tenn. Wesleyan Coll.*, 60 Tenn. App. 624, 634 (Tenn. Ct. App. 1969). In *Roberts*, this Court concluded that a lessee of a venue for a ballet recital owed a duty to ensure that the steps of the exit of the building were

reasonably well lit. *Id.* at 634–35. According to Ms. Newell, the parking spaces in front of Elite constitute part of the approach to Elite, and Elite owed her a duty to warn or remove the "slush" as part of its duty to maintain a safe entryway.

However, the evidence supports Elite's position that it maintained a safe approach. According to Ms. Newell, the area around the entrance to Elite and the entire parking lot was completely free of ice on the day that she fell—except for the parking spaces in which she chose to park. Ms. Newell's exhibit, a photograph taken the same day as her fall by her sister, shows that the sidewalks of the shopping center outside the entrance to Elite are covered with an overhang and clear of "slush." In her deposition, the following exchange took place:

Q: Was there still some snow, slush, ice stuff out in the parking lot itself [on the day you fell]?

A: No, sir.

Q: Okay.

A: The parking lot was clear.

. . .

Q: Okay. So there was still some frozen stuff, slushy stuff up next to the curb and those parking spaces right in front of the salon?

A: Yes, sir.

She testified that she parked in those spaces because they were the closest to her destination and she "assumed it was safe" because other customers had parked in those spaces. Ms. Newell testified that she used her car to steady herself on the way inside, and warned her companions to be careful not to slip in the clearly visible slush. Based on our review of the record, it is clear that Ms. Newell could have safely entered Elite without walking through the "slush" by walking through the clear parking lot and utilizing the clear sidewalks or ramps to avoid injury. She chose not to do so. Under these circumstances, we find that the spaces in front of Elite do not constitute part of Elite's approach for purposes of establishing the duty element of Ms. Newell's claim.

## II. DUTY: BALANCING TEST APPLIED

Ms. Newell argues that the trial court erred in applying the test for the scope of duty in a premises liability action. Specifically, Ms. Newell assigns error to the trial court's conclusion that any duty of care owed did not extend to the slush because it was an open and obvious hazard. However, because Ms. Newell failed to establish that Elite's

duty extended to the area in which she fell, it is not necessary for us to review this issue and it is pretermitted.

## CONCLUSION

For the foregoing reasons, we affirm the order of the trial court granting summary judgment in favor of Appellee. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Tina Lynn Davis Newell, and her surety, for which execution, if necessary, may issue.

_____
ARNOLD B. GOLDIN, JUDGE