IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2019 Session

**ELIZABETH JONES, ET AL. v. EARTH FARE, INC., ET AL.**

**Appeal from the Circuit Court for Knox County**
**No. 2-54-16      William T. Ailor, Judge**

_____

**No. E2019-00450-COA-R3-CV**

_____

This is a premises liability action in which the plaintiffs, a husband and wife, filed suit against the defendant grocery store for personal injuries and other damages resulting from the wife's slip and fall in the parking lot. The trial court granted the defendant's motion for summary judgment, holding that the plaintiffs failed to establish that the defendant owed a duty of care to maintain the parking lot, which was owned and operated by a third party. The plaintiffs appeal. We reverse the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J. and D. MICHAEL SWINEY, C.J., joined.

Jerry M. Martin, Knoxville, Tennessee, for the appellants, Elizabeth and Kevin Jones.

J. Chad Hogue, Brentwood, Tennessee, for the appellee, Earth Fare, Inc.

**OPINION**

**I.      BACKGROUND**

On April 15, 2015, Andrea Rodgers went to Earth Fare, Inc. ("Earth Fare"), a commercial retail establishment operating in Knoxville, Tennessee. While walking through the parking lot, Mrs. Rodgers slipped in a large puddle of antifreeze[1] and fell to the ground. Mrs. Rodgers righted herself and walked into the store, where she informed the manager on duty, Sandy Slaton, that she had fallen in antifreeze while traversing

---

[1] The parties agreed that the substance was most likely antifreeze based upon its appearance and location in the parking lot.

through the parking lot. Mrs. Slaton then accompanied Mrs. Rodgers to the parking lot, where she viewed the location of the puddle. Mrs. Slaton returned to the store to retrieve a bag of cat litter to place over the puddle. While inside, she helped another employee complete a transaction with a customer.

Meanwhile, Elizabeth Jones exited the store with her purchases. While traversing through the parking lot, she slipped in the large puddle of antifreeze and fell to the ground, causing injury. Another customer informed Mrs. Slaton of the incident. Mrs. Slaton returned to the parking lot, where she assisted Mrs. Jones.

Mrs. Jones, along with her husband Kevin Jones (collectively "Plaintiffs"), filed suit against Earth Fare ("Defendant") and CH Forest Park Partners ("Forest Park") and others with an interest in the property (collectively "the Third Party Defendants"). The Third Party Defendants denied liability and moved for summary judgment, claiming that they did not cause the dangerous condition and had no notice of the same.[2] Defendant also denied liability[3] and moved for summary judgment with supporting affidavits, claiming that it had no legal or contractual duty to maintain the area where Mrs. Jones fell. Defendant explained that it leased the premises from Forest Park and that the lessor's agents and assigns had the exclusive duty to maintain the area of the parking lot pursuant to the terms of the lease agreement.

Plaintiffs opposed the motion for summary judgment, claiming that genuine issues of material fact remained, citing Mrs. Slaton's deposition in which she outlined Defendant's history of maintaining the parking lot. Mrs. Slaton attested as follows:

Q:    Well, as part of your job and your job duties being either the manager on duty or the front end supervisor, what, if anything, do your employees do in relation to the parking lot?

* * *

A:    Okay. We get the carts off the lot. If one of our customers walks out and maybe drops milk, drops wine, drops something glass, we will go out and clean it up the best of our ability, we'll get all the glass up and if

---

[2] The trial court granted the Third Party Defendants' motion for summary judgment pursuant to an agreed order entered into by the Parties in which everyone agreed that the Third Party Defendants had no notice of the alleged dangerous condition and could not be held liable as a matter of law.

[3] Defendant also filed a cross-complaint against the Third Party Defendants, who responded with their own cross-complaint. The competing complaints were ultimately dismissed without prejudice and are not at issue in this appeal.

it's something that we need, we'll take water out there and pour it on it. If one of our customers leaves and their child throws up, we'll go out there and try to throw some water or something to dilute it. I mean, you know, if our customers come in and tell us they've done something to the parking lot, we will go out there and try to take care of it. Now, mind you, we don't know how to take care of it but we try.

When asked how long the antifreeze at issue had been on the lot, she responded as follows:

I have no idea. I will say this; if there's something in this parking lot that a customer notices that would be a danger, somebody will say something. If somebody's dropped glass out there, they'll say there's glass out there, somebody will run over it. We'll go out and sweep it up. If a customer drops something, they'll come in and tell us. There's people that tells us their stuff, you know. We do not call [the property manager for the Third Party Defendants] on that, we'll go out and get it up ourself [sic].

Plaintiffs explained that Defendant owed a duty to maintain the lot as a result of its repeated exercise of control over the parking lot.

The case proceeding to a hearing, after which the trial court granted summary judgment in favor of Defendant. The court held that Defendant did not owe a duty of care to maintain the parking lot or to correct or warn about the alleged defect because it was not the owner or operator of the property. This timely appeal followed.

## II.   ISSUE

The sole and dispositive issue on appeal is whether the trial court erred in granting summary judgment in favor of Defendant based upon its finding that Defendant did not owe a duty to correct or warn about the spill.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The standard of review following a trial court's decision on a motion for summary judgment is de novo with no presumption of correctness. *Tantham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015) (citing *Parker v. Holiday Hospitality Franchising, Inc.*, 446

S.W.3d 341, 346 (Tenn. 2014)).  We must make a fresh determination that the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997).  When reviewing the evidence, we must determine whether any factual disputes exist.  *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).  If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial.  *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015); *Byrd*, 847 S.W.2d at 211.  The moving party who does not bear the burden of proof at trial "may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense."  *Rye*, 477 S.W.3d at 264.  If the moving party satisfies the burden of production, the nonmoving party must respond by setting forth "specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

In evaluating the evidence in the summary judgment context, we must view the evidence in the light most favorable to the nonmoving party, and we must draw all reasonable inferences in favor of that party.  *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 202, 373-74 (Tenn. 2007); *Abbott v. Blount Cnty.*, 207 S.W.3d 732, 735 (Tenn. 2006).

## IV.   DISCUSSION

To prevail on a negligence claim, a plaintiff must establish the following elements:

(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause.

*Biscan v. Brown*, 160 S.W.3d 462, 478-79 (Tenn. 2005) (citing *Coln v. City of Savannah*, 266 S.W.2d 34, 39 (Tenn. 1998)).  In addition to the elements of negligence, a plaintiff must prove either that:

(1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner had actual or constructive notice that the condition existed prior to the accident.

- 4 -

*Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d at 350 (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004)). Further, "a plaintiff is required to prove that the injury was a reasonably foreseeable probability and that some action within the defendant's power more probably than not would have prevented the injury." *Dobson v. State*, 23 S.W.3d 324, 331 (Tenn. Ct. App. 1999)).

At issue here is the trial court's decision that Defendant owed no duty of care toward Mrs. Jones because it was not the owner or operator of the parking lot. It is undisputed that the lease agreement specified that Forest Park was responsible for the maintenance of the parking lot. The lease states, in pertinent part, as follows:

> The Premises are a part of the Shopping Center depicted on Exhibit "A" which includes parking areas, landscaping and other areas and facilities intended for the common use of the occupants of the Shopping Center and their agents, employees and customers. Tenant, as well as its agents, employees and customers, shall have the non-exclusive right to use all such common areas in first-class condition, repair and cleanliness, including ice, snow, water, mud and debris removal, and free of any impediments to easy and safe movement, including having such common areas well-lighted during all business hours, at competitive rates and costs. During the term, Landlord's obligation shall, without limiting the general liability thereof, include the following:
>
> > Resurfacing the parking areas and driveways, including keeping the surfaces in a level, smooth and evenly covered condition with the type of surfacing material originally installed or such first-class substitute which shall in all respects be equal in quality, use and durability;
> >
> > Cleaning, striping and lighting and all other tasks necessary to maintain the parking and common areas in a clean, safe, orderly and first-class condition, including, but not limited to, removal of trash, rubbish, garbage and other refuse, snow and ice[.]

Despite the terms of the lease agreement, Plaintiffs argue that Defendant still owed its patrons a duty of care as the lessee of the area in which she fell because Defendant exercised control of the parking lot by cleaning spills and removing debris when notified by its patrons. Duty is defined as "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm," and a duty exists "if defendant's conduct poses an unreasonable and

foreseeable risk of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). A risk is unreasonable where "the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.*

This court has provided the following guidance in premises liability cases involving leased premises:

> It is well established that when a landlord retains possession of a part of the premises for use in common by different tenants, the landlord is under a continuing duty imposed by law to exercise reasonable care to keep the common areas in good repair and safe condition. Although the landlord has the duty to keep common areas safe and in good repair, a lessee also has a duty to see that the leased premises and its approach is in a reasonably safe condition. However, a lessee does not have a duty to a customer, injured in the common parking area of a shopping center, when the lessee has not exercised control over the parking lot and the lessee's lease provides that the lessor is responsible for maintaining the safety of the common areas.

*Newell v. First State Bank, Inc.*, No. W2017-01209-COA-R3-CV, 2017 WL 6063115, at *3 (Tenn. Ct. App. Dec. 7, 2017). *See also Berry v. Houchens Mkt. of Tennessee, Inc.*, 253 S.W.3d 141, 146 (Tenn. Ct. App. 2007) (providing the same guidance).

Here, Defendant exercised control over the area in which the injury occurred by clearing the lot of debris and cleaning spills. Defendant maintained the premises in this manner without even notifying the facility manager for the Third Party Defendants. In consideration of the foregoing, we hold that Defendants assumed a duty to maintain the parking lot in the area where the injury occurred. Further, it was foreseeable that Mrs. Jones might slip and fall, causing injury, when another patron alerted Defendant to the dangerous condition. The alternative conduct that would have prevented the harm, e.g., alerting patrons by either remaining in the area until another employee could assist with the spill or crafting a barrier with shopping carts, is not overly burdensome. Having concluded that a duty of care was owed, we hold that the trial court erred in granting summary judgment at this point in the proceedings because material questions of fact remained concerning whether Defendant breached its duty of care owed to Mrs. Jones.

## V. CONCLUSION

We reverse the decision of the trial court and remand for further proceedings consistent with this opinion. Costs of the appeal are taxed to the appellee, Earth Fare, Inc.

_____
JOHN W. McCLARTY, JUDGE